UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ANDREA JENKINS-BROWN, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 3:14-cv-01610-ST |
| v. | **FINDINGS AND RECOMMENDATION** |
| LIBERTY ACQUISITIONS SERVICING, LLC, and THOMAS L. POTTER, IV, an individual, | |
| Defendants. | |

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Andrea Jenkins-Brown ("Jenkins-Brown"), filed this proposed class action on behalf of herself and others similarly situated against defendants Liberty Acquisitions Servicing, LLC ("Liberty"), a collection agency, and its attorney, Thomas L. Potter ("Potter"), alleging a claim under the federal Fair Debt Collections Practices Act, 15 USC § 1692(a)-(p) ("FDCPA"). Jenkins-Brown alleges that defendants improperly pursued collection of certain debts by adding contractual interest to which they had no right to seek recovery. The proposed class includes all individuals in the United States from whom defendants attempted to collect a charged-off consumer Demand Deposit Account ("DDA") debt originating with U.S. Bancorp ("U.S. Bank")

and/or Wells Fargo Bank N.A. ("Wells Fargo") and to which defendants added interest to the amount of the alleged debt.

Based on a provision in the DDA Agreement between Jenkins-Brown and U.S. bank, defendants have filed a Motion to Compel Arbitration (docket #13). For the reasons set forth below, that motion should be denied.

## ALLEGATIONS

U.S. Bank and Wells Fargo allowed consumers who opened and held DDAs to overdraft those accounts in certain situations. Complaint, ¶ 8. However, when overdrafts occurred, the banks charged the account holders certain fees associated with the overdrafts, but never charged interest. *Id*. If a consumer failed to pay the overdraft fee, the banks would attempt to collect the fee and, if unsuccessful, would typically "charge off" the DDA for delinquency, effectively declaring them uncollectable. *Id*, ¶ 9. The banks then sold these debts to United Credit Recovery, LLC, who sold them to Liberty Acquisitions II who, in turn, sold them to Liberty. *Id*, ¶ 10. Thus, Liberty, as an assignee, acquired the rights to large volumes of charged-off consumer DDAs from the banks. *Id*, ¶ 11. The banks' DDA Agreements do not provide for the imposition of any contractual interest or other interest upon default, and the banks never allocated or charged any interest on the DDAs when attempting to collect amounts owed from the account holders. *Id*, ¶¶ 12-13.

In October 2013, Liberty, through Potter, sued Jenkins-Brown in Multnomah County Circuit Court for an alleged overdraft debt that had accrued on her U.S. Bank DDA ("state lawsuit"). *Id*, ¶ 16. The complaint alleged that Jenkins-Brown owed an unpaid principal balance of $585.78, accruing from October 30, 2008, plus interest of $1,132.69, calculated at the contractual rate of 21.9% compounded monthly since October 30, 2008. *Id*, ¶¶ 19-20. Jenkins-

2 – FINDINGS AND RECOMMENDATION

Brown was personally served with a copy of that complaint on November 5, 2013. *Id*, ¶ 18. Liberty, through Potter, filed a Motion for an Award of Default for the amounts alleged in the complaint. *Id*, ¶ 22. On January 31, 2014, the court entered a default judgment for the principal amount of $585.78, pre-judgment interest of $1,215.50, and post-judgment interest calculated at the rate of 21.9% per annum compounded monthly. *Id*, ¶¶ 23-24.

Jenkins-Brown eventually contacted Liberty in an attempt to satisfy the default judgment and made multiple payments to do so. *Id*, ¶ 26. Liberty filed a Full Satisfaction of Money Award with the state court on June 27, 2014. *Id*, ¶ 27.

By adding interest to the amount of the alleged debt that had not been added by U.S. Bank under the terms of the DDA Agreement, Jenkins-Brown alleges that defendants violated the FDCPA. *Id*, ¶ 40. She seeks recovery of actual damages, including all amounts of interest paid, statutory damages, and attorney fees and costs. *Id*, ¶ 41.

## STANDARD

The Federal Arbitration Act ("FAA") mandates that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USC § 2. If an issue is subject to arbitration under a written agreement, the court is required to direct that issue to arbitration and stay the trial of the remaining issues until arbitration is complete. 9 USC § 3. However, a court may order parties to proceed to arbitration only upon "being satisfied that the making of the agreement for arbitration . . . is not in issue." 9 USC § 4. "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v.*

*Ortho Diagnostic Sys., Inc.*, 207 F3d 1126, 1130 (9th Cir 2000), citing 9 USC § 4 (other citations omitted).

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 US 574, 582 (1960). State contract law controls whether the parties have agreed to arbitrate. *Knutson v. Sirius XM Radio Inc.*, 771 F3d 559, 565 (9th Cir 2014). "At least as to a contract's essential terms, a valid contract exists only when there is a meeting of the minds and where all terms are either agreed upon or there is a method agreed upon by which open and disputed terms can be settled, such that nothing is left for future negotiation." *Dalton v. Robert Jahn Corp.*, 209 Or App 120, 132, 146 P3d 399, 406 (2006), citing *Phillips v. Johnson*, 266 Or 544, 555-56, 514 P2d 1337, 1343 (1973). If the arbitration clause is enforceable, then the party seeking to avoid arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 US 79, 91 (2000). If there are "any doubts" concerning the scope of arbitrability, a court should resolve the dispute in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 626 (1985).

## FINDINGS

### I.  Validity of Agreement to Arbitrate

In support of their motion, defendants have submitted a declaration from Gabriel Grant, the custodian of Liberty's records, attaching various records "kept in the regular course of business." Grant Decl. (docket #14), ¶ 2. Based on those documents, Mr. Grant attests that on January 15, 2008, Jenkins-Brown entered into a service contract with U.S. Bank for a DDA and

that the "terms and conditions of the contract were in writing and available to [her][1] for review at the time of or before formation." *Id*, ¶ 5. The terms and conditions in that contract include the following arbitration provision:

> ARBITRATION
>
> This section does not apply to any dispute in which the amount in controversy is within the jurisdictional limits of, and is filed in, a small claims court. These arbitration provisions shall survive closure of your account or termination of all business with us. If any provision of this section is ruled invalid or unenforceable, this section shall be rendered null and void in its entirety.
>
> Arbitration Rules: If you or we elect to arbitrate a dispute concerning your account, the dispute will be decided by arbitration under the Commercial Arbitration Rules of the American Arbitration Association. If this arbitrator or these arbitration rules are not available, then you and we will use a comparable substitute arbitration procedure and/or arbitration organization that does business on a nationwide basis. You may obtain rules and forms by calling the AAA at 800-778-7879. Any arbitration hearing that you attend will be in the federal judicial district where you reside.
>
> Arbitration Process: Arbitration involves the review and resolution of the dispute by a neutral party. The arbitrator's decision will generally be final and binding. At your request, for claims relating to consumer accounts, we will advance the first $250 of the filing and hearing fees for any claim you file against us; the arbitrator will decide whether we or you will ultimately pay those fees. Arbitration can only decide our or your dispute and cannot consolidate or join claims by other persons who may have similar claims. There will be no authority or right for any disputes to be arbitrated on a class action basis.
>
> Effects of Arbitration: If either of us chooses arbitration, neither of us will have the right to litigate the dispute in court or have a jury trial. In addition, you will not have the right to participate as a representative or member of any class of claimants pertaining to any dispute subject to arbitration.

*Id*, ¶ 6 & Ex. C, p. 15.

---

[1] Although Mr. Grant states that the contract was "available to the Defendant," the context reveals that he meant to refer to Jenkins-Brown and not "the Defendant."

5 – FINDINGS AND RECOMMENDATION

Defendants seek to invoke that arbitration clause and compel arbitration.

Jenkins-Brown responds that she never entered into an agreement with Liberty to arbitrate. In fact, she disputes that she consented to arbitrate any claims against her by U.S. Bank. Jenkins-Brown Decl. (docket #20), ¶ 3. She states that she "never received, read, signed, [saw] or otherwise agreed to" the DDA Agreement submitted by defendants and, specifically, "was never given a chance to consider or agree to, and did not agree to, the arbitration clause contained in that document." *Id*, ¶¶ 2-3. And even if she did consent, she argues that Liberty, as a purported downstream assignee of the banks, cannot assert any rights under the arbitration clause.

Jenkins-Brown makes several arguments regarding a dearth of competent evidence to prove that Liberty actually acquired any interest in Jenkins-Brown's DDA with U.S. Bank, let alone the right to invoke the arbitration clause. She points out several deficiencies in Mr. Grant's declaration, including his lack of first-hand knowledge of the facts, the failure of the exhibits to support his statements, the inadmissibility of some of the exhibits as hearsay, and the lack of foundation to authenticate or possibly establish the admissibility of the exhibits as business records.[2] Based on these deficiencies, she argues that Mr. Grant's declaration and the attached documents provide no authenticating information regarding what specific DDAs, debts, or rights Liberty acquired; whether the generic DDA Agreement applies to her; the amount and date of her debt; or even the source of the interest charge.

---

[2] It is somewhat unclear as to how evidentiary submissions are treated when considering a request for dismissal in the context of a motion to compel arbitration. *Sanford v. Memberworks, Inc.*, 483 F3d 956, 963 n9 (9th Cir 2007) (noting uncertainty as to whether "Rule 56 procedures are applicable to a motion to compel" arbitration (citation omitted)). However, the "denial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration." *Cox v. Ocean View Hotel Corp.*, 533 F3d 1114, 1119 (9th Cir 2008). Accordingly, this court will apply the same evidentiary analysis as for a summary judgment motion, viewing all inferences from the record in the light most favorable to the non-movant. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F3d 1084, 1092 (9th Cir 2010).

Defendants respond to this attack by disclaiming any need to offer testimony or documents demonstrating that Liberty acquired Jenkins-Brown's debt to U.S. Bank or that her debt is governed by the DDA Agreement. Instead, they rely on the default judgment that Liberty obtained against Jenkins-Brown in the state court case.

Under Oregon law, "[t]he doctrine of *res judicata*, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default." *Gwynn v. Wilhelm*, 226 Or 606, 609, 360 P2d 312, 313 (1961) (citations omitted). "Collateral estoppel is established when it is shown that the issues sought to be litigated have already been litigated and reduced to judgment in an earlier action between the same parties or their privies." *Carter v. Ricker*, 241 Or 342, 344, 405 P2d 854, 855 (1965) (citation omitted).

The Complaint in the state court case alleges that Jenkins-Brown "entered into a service contract with U.S. Bank" for a DDA on January 15, 2008, and that she used and overdrew that account, becoming indebted to U.S. Bank. Grant Decl., Ex. D, ¶¶ 3-5, 12-13. When she failed to pay the debt when due, U.S. Bank charged off her account on October 30, 2008. *Id*, Ex. D, ¶ 6. By virtue of an Assignment and Bill of Sale, Liberty then bought her "account, contract, and claim" on August 19, 2013, and "is the legal owner and holder of the claim." *Id*, Ex. D, ¶ 7. It also alleges that Jenkins-Brown is indebted to Liberty in the principal sum of $585.78 and seeks to recover that amount plus interest at 21.9%. *Id*, Ex. D, ¶¶ 8-9. Based on the default judgment, which has been paid in full, defendants contend that Jenkins-Brown is precluded by *res judicata* from arguing any facts contrary to the allegations that led to that judgment.

However, defendants read too much into those allegations which do not establish several of the facts central to their current motion. By allowing a default judgment to be entered against her in the state court case, Jenkins-Brown is precluded only from relitigating that she had a DDA

7 – FINDINGS AND RECOMMENDATION

which she overdrew and became obligated to pay $585.78 to U.S. Bank and then to Liberty who purchased her "account, contract, and claim."  However, nothing in the state court complaint refers to or establishes the terms and conditions applicable to Jenkins-Brown's DDA with U.S. Bank, and more importantly, whether Jenkins-Brown ever entered in the generic and unsigned DDA Agreement containing the arbitration clause at issue.  Jenkins-Brown cannot be held to a contract's arbitration provision that she never consented to or that did not accompany the account assigned to Liberty and where the party seeking to compel arbitration fails to demonstrate otherwise.

On the other hand, by virtue of the default judgment in the state court case, Jenkins-Brown cannot dispute that Liberty acquired her "account, contract, and claim" by virtue of an Assignment and Bill of Sale.  Under ordinary assignment principles, Liberty obtained all of the assignor's rights relating to DDA debt, including the right to payment.  "[U]nder well-established Oregon law, an assignment is an immediate, unconditional transfer of rights held by the assignor to the assignee.  As a result, '[a]n assignee stands in the shoes of his assignor' and acquires all of the legal rights that the assignor possessed." *Sterling Sav. Bank ex rel. Nw. Lending Partners, LLC v. Emerald Dev. Co.*,  266 Or App 312, 325, 338 P3d 719, 726 -27 (2014) (citations omitted).  According to Mr. Grant, the assignment to Liberty of Jenkins-Brown's debt is evidenced by three documents.  Grant Decl., ¶ 3 & Ex. A.  As noted above, however, those documents, even if properly authenticated, indicate Liberty acquired fewer than all the rights U.S. Bank possessed.  In the first assignment, U.S. Bank sold to United Credit Recovery, LLC only "[c]ertain Charged-off Accounts . . . together with the right to collect all principal, interest and legally collectible costs remaining due and owing on and under the Charged-off Accounts as of the date hereof." *Id*, Ex. A, p. 3.  The assignment from Liberty II to

Liberty conveyed a similarly narrow interest, namely "the Accounts identified and known as Pool 803, and all proceeds received on the Accounts." *Id*, Ex. A, p. 1. U.S. Bank did not assign all of its rights granted to it by the DDA Agreement, and even if it did, Liberty II did not assign to Liberty any right to arbitrate.

Given that the parties dispute whether a valid arbitration agreement exists between Jenkins-Brown and U.S. Bank, defendants' motion should be denied. However, even if a valid arbitration agreement exists between Jenkins-Brown and U.S. Bank, it does not require her to arbitrate her FDCPA claim against defendants, as discussed next.

## II.     Scope of Arbitration Agreement

Jenkins-Brown contends that, at best, the DDA Agreement only requires arbitration of a claim between her and U.S. Bank and does not purport to also subject to arbitration claims against her by assignees or downstream debt collectors. The arbitration clause in the generic DDA Agreement provides that if "you or we elect to arbitrate a dispute concerning your account," then the parties must arbitrate under AAA rules. Grant Decl., Ex. C, p. 15. The terms "you" and "we" are defined in the agreement: "you" means the "account holder" (Jenkins-Brown), and "we" means "U.S. Bank." *Id*, Ex. C, p. 4. "We" does not expressly include future assignees or other downstream parties who may acquire rights under the DDA Agreement.

Further, even if Liberty somehow had the ability to invoke the arbitration clause in the DDA Agreement, the claim alleged in this case is not a dispute "concerning your account." *Id*, Ex. C, p. 15. This is a dispute concerning Liberty's debt collection practices. Liberty asserts that it acquired the right to collect money, including 21.9% interest, from Jenkins-Brown through its purchase of accounts from a party other than U.S. Bank as a result of a series of purchases and assignments. At the time of Liberty's purchase, those underlying DDAs were closed. Jenkins-

9 – FINDINGS AND RECOMMENDATION

Brown and the class are former account holders of those "charged off" or closed DDA accounts and assert that Liberty improperly added interest to the amounts it sought and collected. As shown by defendants' own submissions (Grant Decl., Exs. B & C), those accounts do not allow for the collection of interest. Jenkins-Brown's FDCPA claim involves defendants' collection practices, not the DDAs that were closed by the banks long before Liberty obtained any ability to collect them. The DDA Agreement simply does not contemplate arbitration of FDCPA claims against a third-party, downstream debt collector, and defendants' submission have not shown otherwise. Thus, the claim alleged in this case is not a claim covered by the arbitration clause in the DDA Agreement.

## RECOMMENDATION

For the reasons set forth above, defendants' Motion to Compel Arbitration (docket #13) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, March 23, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED March 5, 2015.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge