UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ANDREA JENKINS-BROWN, individually
and on behalf of all others similarly situated,

                Plaintiffs,

      v.

LIBERTY ACQUISITIONS SERVICING,
LLC,

                Defendant.

Case No. 3:14-cv-01610-ST

**FINDINGS AND
RECOMMENDATION**

**STEWART, Magistrate Judge:**

**<u>INTRODUCTION</u>**

Plaintiff, Andrea Jenkins-Brown ("Jenkins-Brown"), filed this proposed class action on

behalf of herself and others similarly situated against defendant Liberty Acquisitions Servicing,

LLC ("Liberty"), a collection agency, and its attorney, Thomas L. Potter ("Potter"), alleging a

claim under the Fair Debt Collections Practices Act, 15 USC § 1692a–p ("FDCPA"). Jenkins-

Brown alleges that defendants improperly pursued collection of contractual interest added to

certain debts. The proposed class includes all individuals in the United States from whom

1 – FINDINGS AND RECOMMENDATION

defendants attempted to collect a charged-off consumer Demand Deposit Account ("DDA") debt

originating with U.S. Bancorp ("U.S. Bank") and/or Wells Fargo Bank N.A. ("Wells Fargo") and

against whom defendants charged interest on the amount of the alleged debt.  Jenkins-Brown has

dismissed Potter as a defendant (docket #46).

Liberty previously filed a Motion to Compel Arbitration which was denied (docket #25).

Liberty has now filed a Motion for Summary Judgment (docket #31).  For the following reasons,

that motion also should be denied.

## ALLEGATIONS

At the hearing held on June 5, 2015, the court limited discovery pending resolution of

this motion (docket #41).  Therefore, the parties rely primarily on the allegations in the

Complaint (accepted as true for purposes of this motion) and other documents submitted with the

prior Motion to Compel Arbitration and this motion.

U.S. Bank and Wells Fargo allowed consumers who opened and held DDAs to overdraft

those accounts in certain situations.  Complaint, ¶ 8.  However, when overdrafts occurred, the

banks charged the account holders certain fees associated with the overdrafts, but never charged

interest.  *Id.*  If a consumer failed to pay the overdraft fee, the banks would attempt to collect the

fee and, if unsuccessful, would typically "charge off" the DDA for delinquency, effectively

declaring them uncollectable.  *Id*, ¶ 9.  The banks then sold these debts to United Credit

Recovery, LLC, who sold them to Liberty Acquisitions II who, in turn, sold them to Liberty.  *Id*,

¶ 10.  Thus, Liberty, as an assignee, acquired the rights to large volumes of charged-off

consumer DDAs from the banks.  *Id*, ¶ 11.  The banks' DDA Agreements do not provide for the

imposition of any contractual interest or other interest upon default, and the banks never

2 – FINDINGS AND RECOMMENDATION

allocated or charged any interest on the DDAs when attempting to collect amounts owed from

the account holders. *Id*, ¶¶ 12–13; Grant Decl. (docket #14), ¶¶ 4, 6 & Exs. B & C. [1]

On August 8, 2013, Liberty purchased U.S. Bank's charged off DDAs, including Jenkins-

Brown's account. Grant Decl., ¶¶ 3, 13 & Ex. A. By letter dated August 21, 2013, Liberty

demanded that Jenkins-Brown pay an amount due on her U.S. Bank DDA in the sum of $585.78

plus $1,078.38 interest, for a total of $1,664.16. Jones Decl. (docket #49), Ex. 2, p. 1. Liberty

followed up with letters to Jenkins-Brown dated September 26 and October 28, 2013, stating that

it was "reviewing [her] account to determine whether we will proceed with litigation to collect

this debt." *Id*, pp. 2–3.

On October 24, 2013, Liberty sued Jenkins-Brown in Multnomah County Circuit Court

for an alleged overdraft debt that had accrued on her U.S. Bank DDA. Complaint, ¶ 16; Grant

Decl., ¶ 7 & Ex. D. The complaint alleged that Jenkins-Brown owed an unpaid principal balance

of $585.78, plus interest of $1,132.69, calculated at the contractual rate of 21.9% compounded

monthly since October 30, 2008. Complaint, ¶¶ 20–21; Grant Decl., Ex. D. Jenkins-Brown was

served with a copy of that complaint on November 5, 2013. Complaint, ¶ 18; Grant Decl., ¶ 8.

Liberty sent Jenkins-Brown a proposed payment plan application on November 12, 2013, a

statement dated December 3, 2013, of the "default balance" due of $1,545.87, and notices dated

December 19, 2013, and January 21, 2014, of its intent to request a judgment for the "default

balance" on her "payment agreement"[2] of $1,560.67 and $1,528.01 respectively. Jones Decl.,

Ex. 2, pp. 4–10. Liberty then filed a Motion for an Award of Default, and the state court entered

a default judgment against Jenkins-Brown on January 31, 2014, for the principal amount of

---

[1] The parties have submitted documents with various attachments. Citations to affidavits, declarations, and depositions are identified by the last name of the affiant, declarant, or deponent, and citations are to the paragraph(s) of the affidavit or declaration or to the page(s) of the deposition transcript.
[2] The parties have not submitted any payment agreement entered into by Jenkins-Brown with Liberty.

$585.78, pre-judgment interest of $1,215.50, and post-judgment interest calculated at the rate of 21.9% per annum compounded monthly.  Complaint, ¶¶ 22–24; Grant Decl., ¶ 10 & Ex. F.  After entry of that judgment, Liberty sent six letters to Jenkins-Brown from February through May 2014 stating that she was in default on her "payment agreement" and demanding payment in varying amounts, ranging from $616.24 up to $1,759.22.  Jones Decl., Ex. 2, pp. 11–16.

Jenkins-Brown eventually contacted Liberty in an attempt to satisfy the default judgment and made multiple payments to do so.  Complaint, ¶ 26.  Until well after she paid that judgment, Jenkins-Brown did not know that Liberty was not entitled to collect contractual interest from her.  Jenkins-Brown Decl. (docket #50), ¶ 2.  After Jenkins-Brown paid her debt on or before June 3 (Jones Decl., Ex. 2, p. 17), Liberty filed a Full Satisfaction of Money Award with the state court on June 17, 2014.  Complaint, ¶ 27; Grant Decl., ¶ 12 & Ex. G.[3]

By adding interest to the amount of the alleged debt that had not been added by U.S. Bank under the terms of the DDA Agreement, Jenkins-Brown alleges that Liberty violated the FDCPA.  Complaint, ¶ 40.  She seeks recovery of actual damages, including all amounts of interest paid, all amounts of interest charged but not paid, and/or an order that such interest be cancelled; statutory damages; and attorney fees and costs.  *Id*, ¶ 41.

## STANDARD

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the

---

[3] Without submitting any supporting evidence, Liberty states in footnote 6 in its Reply that at the time of the judgment, Jenkins-Brown had paid Liberty $506.16 and that the total amount paid by Jenkins-Brown ($1,015.40) was less than the balance due on the principal amount of $585.78 plus 9% statutory interest from October 30, 2008, and added court costs of $158.00 and service fees of $43.00.

pleadings" and designate specific facts showing a "genuine issue for trial." *Id,* at 324, citing

FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but

only determine[] whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F3d 1047,

1054 (9th Cir 1999) (citation omitted). The court must view the inferences drawn from the facts

"in the light most favorable to the nonmoving party." *Farrakhan v. Gregoire*, 590 F3d 989,

1014 (9th Cir 2010), citing *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986).

**FINDINGS**

Liberty argues that it is entitled to summary judgment because Jenkins-Brown's claims

are precluded either under the *Rooker-Feldman* doctrine or the issue preclusion doctrine.[4]

## I.      Evidentiary Issues

As a threshold issue, Liberty objects to Jenkins-Brown's submission of its demand letters

to her as outside the scope of the pleadings and irrelevant. The Complaint alleges that "Liberty

frequently sent demand letters to members of the class *prior to filing lawsuits* against those

members of the class . . . ." Complaint, ¶ 28 (emphasis added). However, Liberty argues that

Jenkins-Brown nowhere alleges that she received any demand letters "prior to filing lawsuits"

within the FDCPA's one-year statute of limitations, 15 USC § 1692k(d). Since this action was

filed on October 10, 2014, the one-year statute of limitations limits Liberty's liability to alleged

violations of the FDCPA occurring on or after October 9, 2013. Although Liberty sent demand

letters to Jenkins-Brown within the statute of limitations, Liberty argues that they simply

demanded what the state court had awarded in the default judgment and, thus, are irrelevant.

The Complaint alleges not only that Liberty violated the FDCPA by filing lawsuits, but

also by sending demand letters to class members. Complaint, ¶¶ 28 ("Liberty frequently sent

---

[4] In the alternative, Liberty seeks a "determination of material facts not in substantial controversy and for an order specifying those facts." However, neither party has submitted what material facts they view as undisputed. Therefore, this court is not in a position to address this alternative request.

demand letters to members of the class prior to filing lawsuits"*)*, 29 ( Liberty "demanded

payment from class members of contractual interest and threatened to file and did file lawsuits

against class members"), 40 ("By attempting to collect from Plaintiff and class members . . ..").

Furthermore, the common questions alleged for the class action include "[w]hether Defendants'

conduct in *demanding payment* of such interest *through communications, demands, threatened*

*lawsuits,* or the filing of lawsuits against Plaintiff and class members violates the [FDCPA.]"  *Id*,

¶ 33(c) (emphasis added).  Liberty apparently interprets these allegations as applying only to

demand letters sent by Liberty prior to filing lawsuits.  The Complaint is not as limited in scope

as Liberty suggests, but instead could reasonably be interpreted to include demand letters sent by

Liberty at any time to class members to collect the illegal interest.

Even under Liberty's interpretation, Jenkins-Brown received one demand letter dated

October  28, 2013, within the one-year statute of limitations.  Although Liberty had already filed

its lawsuit in state court against her a few days earlier, this letter informed Jenkins-Brown only

that Liberty was "reviewing [her] account to determine whether [it would] proceed with

litigation to collect this debt" and demanding interest to which she claims it was not entitled.

Liberty then sent at least six additional collection letters to her asserting a right to contractual

interest before it obtained a default judgment, some of which referred to her "payment

agreement" and some of which referred to amounts due that differ from the default judgment.

Therefore, Liberty's letters did not simply demand payment of the amount awarded by the state

court to Liberty in the default judgment.

Accordingly, Liberty's evidentiary objections are overruled.

///

///

6 – FINDINGS AND RECOMMENDATION

**II.**     *Rooker-Feldman* **Doctrine**

Pursuant to the *Rooker-Feldman* doctrine, federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments.  *D.C. Court of Appeals v. Feldman*, 460 US 462, 476 (1983) (citations omitted); *Rooker v. Fid. Trust Co.*, 263 US 413, 416 (1923) (citations omitted).  The basic premise of that doctrine is that "a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court." *Noel v. Hall*, 341 F3d 1148, 1154 (9th Cir 2003).  Instead, the United States Supreme Court is the only federal court with jurisdiction to hear appeals from state courts.  *Id*; *see* 28 USC § 1257.

"[T]he clearest case for dismissal based on the *Rooker-Feldman* doctrine occurs when a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision."  *Reusser v. Wachovia Bank*, 525 F3d 855, 859 (9th Cir 2008) (citations omitted).  However, the doctrine also applies when a federal action is "a *de facto* appeal from a state court judgment."  *Id*, quoting *Kougasian v. TMSL, Inc.*, 359 F3d 1136, 1139 (9th Cir 2004).

> A federal action constitutes such a *de facto* appeal where "claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules."  In such circumstances, "the district court is in essence being called upon to review the state court decision."

*Reusser*, 525 F3d at 859 (citations omitted).

In contrast,  the doctrine does not apply when a federal plaintiff presents an independent claim that asserts "as a legal wrong that an adverse party engaged in 'conduct which prevent[ed] a [federal plaintiff] from presenting his claim in court.'  The focus of such claim is not on whether a state court committed legal error, but rather on 'a wrongful act by the adverse party.'"  *Id* (alterations in original) (citations omitted), quoting *Kougasian*, 359 F3d at 1140–41.

The *Rooker-Feldman* doctrine simply does not apply here.  Liberty argues that by complaining of injuries caused by entry of the state court judgment, Jenkins-Brown invites this court to review and reject that judgment.  However, Jenkins-Brown does not allege that the state court made a mistake when entering the default judgment against her.  Instead, the Complaint alleges that, both before, during and after entry of the state court judgment, Liberty claimed a right to interest on the unpaid principal overdraft debt even though the DDA agreements do not provide for imposition or charges of any interest upon default.  In other words, Liberty committed illegal acts separate and apart from the state court's entry of judgment against her (or any other class member) by misrepresenting both to her and the state court that it had a right to collect interest on the overdraft debt.  Thus, Liberty's alleged liability arises from separate and independent violations of federal law, not from any legal error made by the state court.

In support, Liberty cites two District of Oregon cases that applied the *Rooker-Feldman* doctrine to dismiss FDCPA claims.  However, both of those cases are distinguishable.  In *Dixon v. Falcon Heights Condo. Ass'n*, No 1:12-cv-0439-CL, 2013 WL 6189965 (D Or Nov. 26, 2013), the *pro se* plaintiff alleged many claims, including FDCPA violations, based on his contention that a foreclosure proceeding in state court was "unfair, biased, and devoid of any legal effect." *Id* at *3.  Without the benefit of a helpful legal analysis by the plaintiff, the court interpreted his claims as directly challenging and seeking to undo a fully litigated state court proceeding and, thus, dismissed them based on the *Rooker-Feldman* doctrine.  *Id* at *3–4.  In *Brooks v. Vinci*, No. CV 09-1354-HU, 2010 WL 3607778, (D Or July 29, 2010), adopted by 2010 WL 3606616 (D Or Sept. 9, 2010), the plaintiff's FDCPA claims related to garnishments to collect a default judgment.  The plaintiff alleged that because he was "deprived of the opportunity to proceed in the state court proceeding" his FDCPA claim and the state court action were not inextricably

intertwined. *Id* at *3.  The court disagreed because "*Rooker-Feldman* applies regardless of whether the federal court plaintiff had a full opportunity to litigate in state court," citing *Bianchi v. Rylaarsdam*, 334 F3d 895, 896 (9th Cir 2003).  *Id.*  However, the court did not cite *Kougasian* or *Reusser* or assess any of the claim could be characterized as alleging fraud, as in this case.

In contrast, this case is more akin to *Martinez v. CACH, LLC*, No. 10CV1625 DMS (JMA), 2011 WL 2560251 (SD Cal June 27, 2011), a class action suit involving a downstream debt collector suing consumers on debts allegedly purchased from a bank.  After obtaining the plaintiff's debt by assignment or transfer, the defendant sued the plaintiff in state court, claiming a right to collect 24.5% annual fixed interest rate on the underlying debt.  In federal court, the plaintiff alleged that, by suing him in state court for interest rates it did not have a legal right to collect, the defendant violated the FDCPA and its California state law counterpart, the Rosenthal Act.  The defendant moved to dismiss for lack of subject matter jurisdiction based in part on the *Rooker-Feldman* doctrine, arguing that the federal suit was a collateral attack on the final state court judgments it had secured.  The district court rejected that argument because the plaintiff claimed the defendant "became liable under the FDCPA and the Rosenthal Act immediately upon filing of the state court complaints against Plaintiff and the putative class members and that any judgments obtained by [the defendant] against members of the putative class will remain undisturbed by this action."  *Id* at *3.  The court also noted that the defendant had failed to provide proof of any state court judgment against the plaintiff or the class.  *Id*.

This court finds *Martinez* persuasive.  As the plaintiff in *Martinez*, Jenkins-Brown claims that by pursuing interest to which it has no legal right, Liberty violated the FDCPA.  Also as the plaintiff in *Martinez*, Jenkins-Brown does not seek to "disturb" the state court judgment, but seeks separate relief available under the FDCPA.  Any difference between this case and *Martinez*

9 – FINDINGS AND RECOMMENDATION

is not dispositive to the outcome of the analogous issues.  Moreover, other courts have similarly

declined to dismiss FDCPA claims based on *Rooker-Feldman* where a judgment on the debt had

been entered in state court.  *See, e.g.*, *Cameron v. LR Credit 22, LLC*, 998 F Supp2d 293, 297

(SDNY 2014) (a claim that defendants used allegedly deceptive means to induce the plaintiff to

agree to a settlement is independent of the state court judgment enforcing the settlement); *Foster*

*v. D.B.S. Collection Agency*, 463 F Supp2d 783, 798 (SD Ohio 2006) (*Rooker-Feldman* does not

bar FDCPA claim when plaintiffs' alleged injuries "are not the result of the state court judgments

themselves, but rather from the allegedly illegal practices Defendants used to obtain those state

court judgments.").

Contrary to Liberty's contention, Jenkins-Brown's request for damages does not seek to

vacate or alter the state court judgment.  The Complaint seeks to recover "actual damages"

including all interest paid and "charged but not paid" under 15 USC § 1692k(a)(1) and statutory

damages under 15 USC § 1692k(a)(2)(B).  It makes no mention of the principal overdraft debt,

which was included in the state court complaint.  Thus, the damages requested reflect that the

alleged injury is not simply "undoing" the state court judgment, which included the principal

debt as well as pre- and post-judgment interest.  Instead, Jenkins-Brown and the class members

seek damages resulting from Liberty's illegal collection practices equal to the amount of illegal

interest that Liberty collected as a result of its false representations and unfair practices.

For the foregoing reasons, *Rooker-Feldman* does not apply to bar Jenkins-Brown's

claims.

## III.    <u>Issue Preclusion</u>

Liberty also argues that Jenkins-Brown's claims must be dismissed due to issue

preclusion.  Under Oregon law, "[t]he doctrine of *res judicata*, including collateral estoppel, as to

matters essential to the judgment, applies to judgments by default." *Gwynn v. Wilhelm*, 226 Or

606, 609, 360 P2d 312, 313 (1961) (citations omitted). "Collateral estoppel is established when

it is shown that the issues sought to be litigated have already been litigated and reduced to

judgment in an earlier action between the same parties or their privies." *Carter v. Ricker*, 241 Or

342, 344, 405 P2d 854, 855 (1965) (*en banc*) (citation omitted).

> To bar claims through issue preclusion, five distinct elements must be satisfied:

>> 1. The issue in the two proceedings is identical.  2. The issue was
>> actually litigated and was essential to a final decision on the merits
>> in the prior proceeding.  3. The party sought to be precluded has
>> had a full and fair opportunity to be heard on that issue.  4. The
>> party sought to be precluded was a party or was in privity with a
>> party to the prior proceeding.  5. The prior proceeding was the type
>> of proceeding to which this court will give preclusive effect.

*Nelson v. Emerald People's Util. Dist.*, 318 Or 99, 104, 862 P2d 1293, 1296–97 (1993) (citations

omitted).

As the party asserting issue preclusion, Liberty "bears the burden of proof on the first,

second, and fourth requirements, whereupon the burden shifts to the party against whom

preclusion is asserted to show that the third and fifth requirements are not met." *Thomas v. U.S.*

*Bank Nat'l Ass'n*, 244 Or App 457, 469, 260 P3d 711, 719 (2011) (citations omitted).

As in its earlier Motion to Compel Arbitration, Liberty asserts that the terms of the DDA

agreement, including interest and arbitration, have been adjudged recoverable by the state court

and cannot be relitigated here.  However, this court rejected that preclusion argument, stating:

> By allowing a default judgment to be entered against her in the state court
> case, Jenkins-Brown is precluded only from relitigating that she had a
> DDA which she overdrew and became obligated to pay $585.78 to U.S.
> Bank and then to Liberty who purchased her "account, contract, and
> claim."  However, nothing in the state court complaint refers to or
> establishes the terms and conditions applicable to Jenkins-Brown's DDA
> with U.S. Bank, and more importantly, whether Jenkins-Brown ever
> entered in the generic and unsigned DDA Agreement containing the
> arbitration clause at issue.

11 – FINDINGS AND RECOMMENDATION

*Jenkins-Brown v. Liberty Acquisitions Servicing, LLC*, No. 3:14-cv-01610-ST, 2015 WL 1757220, at \*4 (D Or Apr. 16, 2015).

The same analysis applies here.  None of the issues litigated and reduced to the default judgment in state court involves Liberty's debt collection practices which are at issue here. False, deceptive, or misleading representations within collection complaints, made during litigation, and communicated post-judgment, constitute FDCPA violations.  *See Donohue v. Quick Collect, Inc.*, 592 F3d 1027, 1033 (9th Cir 2010) (false, deceptive, or misleading allegations in state court complaint concerning amount of debt violates 15 USC §§ 1692e and 1692f); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F3d 939, 952 (9th Cir 2011) (statements in debt collector's discovery requests violate 15 USC §§ 1692e and 1692f); *Fox v. Citicorp Credit Servs., Inc.*, 15 F3d 1507, 1515 (9th Cir 1994) (wrongful garnishment actionable). Jenkins-Brown alleges that Liberty violated the FDCPA by repeatedly sending her and other class members collection letters which demanded contractual interest that it was not entitled to collect.  Liberty then reiterated those false representations in state court complaints, often resulting in default judgments that incorporated the amount of unlawful interest.  Nothing in the prior state court action referred to or established that the terms of the DDA agreement between U.S. Bank and Jenkins-Brown allow for the collection of contractual interest, leaving open the door to the claim in this action that Liberty falsely asserted its right to collect interest.  Whether Liberty obtained a default judgment based on its misrepresentations after its alleged unlawful collection practices had occurred is not relevant to the FDCPA claim.  *See Flores v. Quick Collect, Inc.*, Civ. No. 06-1564-AA, 2007 WL 2769003, at \*3 (D Or Sept. 18, 2007) (entry of a default judgment against plaintiff in state court did not bar an FDCPA claim in federal court based on attempts to collect that judgment).

12 – FINDINGS AND RECOMMENDATION

In sum, there is simply no identity of issues between Jenkins-Brown's FDCPA claim in this case and the underlying state court default judgment to permit issue preclusion.

## RECOMMENDATION

For the reasons set forth above, defendants' Motion for Summary Judgment (docket #31) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Monday, August 17, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED July 29, 2015.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

13 – FINDINGS AND RECOMMENDATION