UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ANDREA JENKINS-BROWN, individually
and on behalf of all others similarly situated**

               Plaintiffs,

   v.

**LIBERTY ACQUISITIONS SERVICING,
LLC**,

               Defendant.

Case No. 3:14-cv-01610-ST

**OPINION & ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

On October 10, 2014, plaintiff, Andrea Jenkins-Brown ("Jenkins-Brown"), filed this proposed class action on behalf of herself and others similarly situated against defendant Liberty Acquisitions Servicing, LLC ("Liberty Servicing"), a collection agency, and its attorney, Thomas L. Potter ("Potter"), alleging one claim under the Fair Debt Collections Practices Act, 15 USC § 1692a–p ("FDCPA"). Jenkins-Brown alleges that defendants improperly pursued collection of contractual interest added to certain charged-off consumer Demand Deposit Accounts ("DDA accounts") originating with U.S. Bancorp ("U.S. Bank") and/or Wells Fargo Bank N.A. ("Wells Fargo"). Potter has since been dismissed and no longer is a defendant in this case (docket #46).

1 – OPINION AND ORDER

Liberty has now filed Motions for Leave to File First Amended Class Action Allegation Complaint (dockets #76 (unredacted) & #78 (redacted)) seeking to:

1. Remove all allegations relating to Wells Fargo DDA accounts and to Potter;

2. Substitute Jesus Villanueva, Jr. ("Villanueva") as class representative in place of Jenkins-Brown;

3. Add Liberty Holdings ("Holdings"), the sole member of Liberty Servicing (collectively the "Liberty Parties"), as a defendant under an alter ego theory of liability for the alleged First Claim of debt collection violations;

4. Allege a new Third Claim for breach of fiduciary duties against the Liberty Parties;

5. Allege a new Second Claim for fraudulent transfer against the Liberty Parties, as well as new defendants, Javlin One, LLC and Javlin Capital, LLC (collectively the "Javlin Parties") based on the sale by the Liberty Parties of all of their assets to Jefferson Capital Systems, LLC ("Jefferson") and an alleged transfer by Jefferson of approximately $7.6 million of the sale proceeds to the Javlin Parties.

## LEGAL STANDARD

Pursuant to FRCP 15(a)(2), a court "should freely give leave" to amend "when justice so requires." However, leave to amend "is not to be granted automatically." *Jackson v. Bank of Haw.*, 902 F2d 1385, 1387 (9th Cir 1990). Deciding whether to grant leave to amend, the Supreme Court has offered the following factors for the court to consider:

> In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. — the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 US 178, 182 (1962); *see also Carvalho v. Equifax Info. Servs., LLC*, 629 F3d 876, 892 (9th Cir 2010).

Of these factors, "[i]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F3d 1048, 1052 (9th Cir 2003).

## DISCUSSION

Liberty Servicing does not oppose the proposed amendment to remove all allegations relating to Wells Fargo DDA accounts. However, it objects to changing the class representative and adding new claims and defendants, and argues that the action should be dismissed because there is no available class representative.

### I. Villanueva as Class Representative

#### A. Proposed Allegations Relating to Villanueva

On September 30, 2013, Liberty Servicing sued Villanueva in Jackson County Circuit Court for an alleged overdraft debt that accrued on his U.S. Bank DDA account. Proposed First Amended Complaint ("FAC"), ¶ 20. The complaint alleged that Villanueva entered into a service contract with U.S. Bank on July 24, 2009, and that Liberty Servicing bought the account on April 13, 2013. *Id*, Ex. A (docket #77), ¶¶ 3, 6. Villanueva owed an unpaid principal balance of $619.29, plus interest of $810.36, calculated at the contractual rate of 21.9% compounded monthly since November 11, 2009. *Id*, ¶¶ 24-25 & Ex. A, ¶ 9. Villanueva was served with a copy of the complaint on October 10, 2013. *Id*, ¶ 22. Liberty Servicing then filed a Motion for an Award of Default, and the state court entered a default judgment against Villanueva on December 13, 2013, for the principal amount of $619.29, pre-judgment interest of $869.36, and post-judgment interest calculated at the rate of 21.9% per annum compounded monthly. *Id*,

¶¶ 27-28. Liberty Servicing garnished Villanueva's wages and filed a Full Satisfaction of Money Award with the state court on September 15, 2014. *Id*, ¶ 30.

B. **Member of Class**

Because Jenkins-Brown is ill and no longer able to serve as the class representative, she proposes Villanueva as her replacement. Where the sole named plaintiff and class representative is unable to continue to serve, another class member who intends to be part of the class may be substituted prior to class certification to fill that role. *Aguilar v. Boulder Brands, Inc.*, No. 3:12-CV-01862-BTM, 2014 WL 4352169, at *9 (SD Cal Sept. 2, 2014). The description of the class currently includes "all individuals . . . from whom Defendants attempted to collect a charged-off consumer [DDA] debt originating with U.S. Bank . . . at any time on or after one year prior to the filing of this action." Complaint, ¶ 30. This definition of the class corresponds with the one-year statute of limitations for FDCPA actions. 15 USC § 1692k(d).

Liberty Servicing's debt collection suit against Jenkins-Brown falls well within the one-year time period. On October 24, 2013, Liberty Servicing sued her in Multnomah County Circuit Court, served her with a copy of the complaint on November 5, 2013, filed a Motion for an Award of Default on January 31, 2014 that the court granted, and filed a Full Satisfaction of Money Award on June 2017. Complaint, ¶¶ 16-27.

As long as Liberty Servicing attempted to improperly collect interest on Villanueva's charged-off DDA account originating from U.S. Bank on or after October 10, 2013 (one year prior to the filing of this action), he is suitable to become the new class representative in place of Jenkins-Brown. Villanueva's debt collection suit was filed in state court on September 30, 2013, about a month before Liberty Servicing sued Jenkins-Brown with a similar suit and over one year prior to the filing of the class action Complaint. However, in addition to filing the debt

collection suit, Liberty Servicing allegedly made other unlawful attempts to collect interest on Villanueva's charged-off DDA account that independently support a claim under the FDCPA. Those actions include filing a Motion for an Award of Default on December 13, 2013, garnishing Villanueva's wages for an amount that included interest (date uncertain), and filing a Full Satisfaction of Money Award with the state court on September 15, 2014. Regardless of when Liberty Servicing filed the lawsuit, its later attempts to collect interest on the charged-off DDA account occurred on or after October 10, 2013, satisfying the requirement to be an eligible class member. As a member of the class, Villanueva is suitable to become the new class representative.

### C. Statute of Limitations

In an abundance of caution, Villanueva filed a separate lawsuit in this court on December 17, 2015, against Liberty Servicing containing the same allegations as in the Proposed FAC which was filed the same day. *Villanueva v. Liberty Acquisition Servs., LLC et al*, Civil Case No. 3:15-cv-02354-ST, [1] Liberty Servicing contends that Villanueva's claims are barred by the statute of limitations because his separate lawsuit was not timely filed within one year after the last possible FDCPA violation on September 15, 2014, when a Full Satisfaction of Money Award was filed. Because Villanueva is a member of the putative class, as discussed above, the original Complaint asserted his claims and is the operative pleading for a statute of limitations analysis. Thus, the timeliness of Villanueva's separately filed action is irrelevant to the analysis.

The Liberty Parties also contend that Villanueva's claim is not timely filed because it does not relate back to the original Complaint. In their view, the statute of limitations for his claim was triggered no later than September 30, 2013, when the debt collection lawsuit was filed

---

[1] If he is allowed to serve as the class representative in this case, then Villanueva requests that his separate case either be consolidated with this case or dismissed.

against Villanueva, which was more than one year before the Complaint was filed on October 10, 2014. The filing of that lawsuit allegedly violated the FDCPA by misrepresenting the Liberty Parties' authority to collect interest on the charged-off DDA accounts at the contractual rate of 21.9%.[2]

However, under Ninth Circuit law, the one-year limitation period for bringing a claim under the FDCPA "begins to run when the plaintiff knows or had reason to know of the injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F3d 935, 940 (9th Cir 2009). Under the discovery rule, the statute of limitations based on the unfair attempt to collect interest through a lawsuit did not begin to run until October 10, 2013, when Villanueva was served with the complaint and discovered the violation. Thus, under the discovery rule, Villanueva had until October 10, 2014, one year after service of the state court complaint to file his claim, rendering his claim timely filed.[3]

The Ninth Circuit's decision in *Naas v. Stolman*, 130 F3d 892 (9th Cir 1997), appears to render the discovery rule inapplicable to FDCPA violations arising from a debt collection suit against a debtor. Considering decisions by the Eighth and Eleventh Circuits, the Ninth Circuit found that when the alleged violation is the filing of the lawsuit, the statute of limitations begins to run on the date the complaint is filed. This conclusion is analogous to other circuits finding that the statute of limitations begins to run when a harassing collection letter is mailed.

---

[2] The Proposed FAC also contains allegations in paragraph 32 of Liberty Servicing mailing Villanueva a demand letter that presumably occurred before it filed suit.

[3] The statute of limitations for attempting to collect Villanueva's debt through a lawsuit began to run the day after Villanueva discovered the violation, on October 11, 2013. *See Hooper v. Capital Credit & Collection Servs., Inc.*, No. CIV. 03-793-JE, 2004 WL825616, at *2 (D Or Jan. 16, 2004) (concluding that the FDCPA time limit is procedural and subject to FRCP 6(a)). As indicated in *Hooper*, there is still no Ninth Circuit decision addressing whether the FDCPA statute of limitations is jurisdictional or procedural, and circuits are split on the issue. *See also Clark v. Bonded Adjustment Co.*, 176 F Supp2d 1062, 1065 (ED Wash 2001). Liberty Servicing does not object to computing the one year beginning on October 11, 2013.

Consistent with these other circuit decisions, the *Naas* court reasoned that commencing the statute of limitations when the debtor had the "last opportunity to comply with the [Act]" was consistent with the purpose of the FDCPA to regulate the actions of debt collections. *Id* at 893, quoting *Maloy v. Phillips*, 64 F3d 607, 608 (11th Cir 1995), *Mattson v. U.S. W. Commc'ns*, 967 F2d 259, 261 (8th Cir 1992).

*Naas* predates *Magnum* and did not consider or analyze whether the plaintiff's discovery of the violation was relevant or prudential to the issue of when the FDCPA statute of limitations began. Unlike here, *Naas* was not faced with deciding between the date of service and the filing of the complaint for triggering the statute of limitations. The debtor in *Naas* did not argue that the limitations period began at filing because his action would be time-barred, but instead argued that the limitations period did not run until the collection suit judgment was upheld by the appeals court. As characterized by the Tenth Circuit, the *Naas* court "never discussed, and apparently never considered, the possibility that the claim accrued upon service" because "the choice between accrual upon filing and accrual upon service was not before the court in *Naas*." *Johnson v. Riddle*, 305 F3d 1107, 1113-14 (10th Cir 2002). Furthermore, the alleged violation in *Naas* was initiating the lawsuit against the debtor. In contrast here, the alleged violation is making false representations in the substance of the complaint. While the debtor in *Naas* could have discovered the violation on the date the lawsuit was filed, Villanueva could not have discovered the false representations until he received a copy of the complaint through service and read the allegations. Because *Naas* is factually distinguishable, its holding is not binding. The court finds the reasoning in *Johnson* persuasive and concludes that, as here, where an alleged violation arose with the filing of a debt collection lawsuit, the statute of limitations accrued when the debtor was served.

Even if Villanueva's claim against Liberty Servicing for filing suit against him in state court is barred by the statute of limitations, he has alleged various other unlawful attempts to collect interest on his debt that support independent claims under the FDCPA, all of which occurred within the statute of limitations. As mentioned above, Liberty Servicing garnished Villanueva's wages and filed a Full Satisfaction of Money Award on September 15, 2014. In *Johnson*, the Tenth Circuit observed that the filing of the debt collection lawsuit, in the absence of service, is only "half [of] an actionable wrong," *i.e.* an "attempt to collect" the debt within the meaning of the statute. *Id*. Because the various statutes of limitations relative to Villanueva's FDCPA claims were triggered as early as October 11, 2013, and as late as September 15, 2014, these claims are not time-barred.

As for the other factors relevant to adding a new party — undue delay, bad faith, and prejudice — Liberty Servicing does not present any substantive arguments. The only evidence of delay is as a result of actions by Liberty Servicing. Upon its request, the court stayed discovery twice in this case (docket ## 17 & 41). Similarly, Liberty Servicing will not suffer any undue prejudice. Villanueva has not been deposed, the class has not been certified, and discovery has been stayed. For these reasons, Villanueva may be substituted as the name plaintiff and class representative.

### III. <u>Adding Liberty Holdings as New Defendant</u>

Jenkins-Brown proposes to add Liberty Holdings, the sole member of Liberty Servicing, as a named defendant under the alter ego theory of liability for alleged debt collection violations. The Proposed FAC alleges that Liberty Servicing acted on behalf of Liberty Holdings in its collection practices and that Liberty Holdings oversaw through its advisory board the collection that resulted in the alleged FDCPA violations. Proposed FAC, ¶¶ 5, 7, 31. Because the statute

of limitations period expired before the Proposed FAC was filed on December 17, 2015, the relation-back doctrine is the only procedural tool to add Liberty Holdings as a defendant to the FDCPA claim.

Under FRCP 15(c), an amendment to a pleading that changes the party against whom a claim is asserted relates back to the date of the original pleadings if: (1) the claim "arose out of the same conduct, transaction or occurrence set out . . . in the original pleading;" (2) within 120 days after the original complaint was filed, the new defendant "received such notice of the action that it will not be prejudiced in defending on the merits;" and (3) the new defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Each element is met in this case.

First, the amended FDCPA claim against the Liberty Parties arises out of the exact conduct underlying Jenkins-Brown's original claim.

Second, Liberty Holdings had notice of the FDCPA claim because the original defendant, Liberty Servicing, is its wholly-owned subsidiary. "If the proposed new defendants have an identity of interest with the named defendant, notice will be imputed to the former." *Brink v. First Credit Res.*, 57 F Supp2d 848, 853-54 (D Ariz 1999), citing *Korn v. Royal Caribbean Cruise Line, Inc.*, 724 F2d 1397, 1401 (9th Cir 1984). Here, the parties have a parent-subsidiary relationship. "When a person owns most or all of the shares in a corporation and controls the affairs of the corporation, it is presumed that in litigation involving that corporation the individual has sufficient commonality of interest." *In re Gottheiner*, 703 F2d 1136, 1139 (9th Cir 1983). The Eleventh Circuit applies a similar definition under FRCP 15(c), holding that "when a complaint naming a corporation as the defendant is later amended to add the corporation's owner, the latter may be deemed to have had notice in light of his or her identity of interests with

the original defendant." *Brink v. First Credit Res.*, 57 F Supp2d 848, 854 (D Ariz 1999), citing *Intel Capital Corp. v. Cups Coal Co.*, 707 F2d 1253, 1258 (11th Cir 1983).

Finally, Liberty Holdings should have known that Jenkins-Brown would allege an FDCPA claim against it had she known that Liberty Servicing carried out the unfair debt collection on behalf of Liberty Holdings. Another district court in this circuit allowed the addition of new, related defendants in FDCPA cases whose existence was not known to the debtor prior to filing the action. *See, e.g.*, *Brink*, 57 F Supp2d at 858 (court allowed addition of corporate officers of the collection agency whose names the plaintiff did not know when filing the complaint); *c.f. Kilkenny v. Arco Marine Inc.*, 800 F2d 853, 857 (9th Cir 1986) (denying addition of new party whose identity was disclosed to plaintiff after the original complaint was filed but before the three-year statute of limitations had run).

At the time of filing the Complaint, Jenkins-Brown was aware that Liberty Holdings existed. The Corporate Disclosure Statement filed with the court did not disclose Liberty Holdings because it is not a publically owned company and because jurisdiction is not based on diversity of citizenship. *See* Local Rule 7.1-1 (requiring disclosure of all members of limited liability corporations). It is not clear when Jenkins-Brown learned of the existence of Liberty Holdings. However, it is highly unlikely that she discovered the identity of Liberty Holdings prior to the expiration of the statute of limitations which expired the day she filed the Complaint.

### IV. Proposed Fraudulent Transfer and Breach of Fiduciary Duties Claims

Both proposed, new claims for fraudulent transfer (Second Claim) asserted against all proposed defendants and breach of fiduciary duty (Third Claim) asserted against the Liberty Parties involve new parties and rest on the same allegations of activities that transpired after the filing of the original Complaint.

### A. Proposed Allegations Regarding Transferred Debt

On December 19, 2014, the Liberty Parties sold substantially all of their assets to Jefferson Capital for a combination of the cash and equity. Proposed FAC, ¶ 34. The Liberty Parties transferred approximately $7.6 million to the Javlin Parties for an antecedent debt allegedly owed to Javlin One by Liberty Acquisitions II, which is also a wholly-owned subsidiary of Liberty Holdings and sold Jenkins-Brown's debt to Liberty Servicing. *Id*, ¶¶ 14, 35, 55. At the time of the transfer the Javlin Parties knew this class action had been filed because at least one member of Liberty Holdings's advisory board, namely Thomas Scott, served on the board of Javlin Capital. *Id*, ¶ 36. The Javlin Parties knew or had reasonable cause to know that the transfer would render the Liberty Parties insolvent and unable to pay Liberty Servicing's outstanding debts, including monetary damages that might be awarded class members in this litigation. *Id*, ¶ 37.

### B. Adding New Claims and Javlin Parties

Again Liberty Servicing centers its opposition on the futility of the new claims based on the relation-back doctrine. FRCP 15(c). Liberty Servicing is correct that the new claims rely on different allegations than the FDCPA claim. However, the claims accrued no earlier than December 19, 2014, when the Liberty Parties sold substantially all of their assets to Jefferson Capital, which is less than one year prior to the filing the motion to amend. Liberty Servicing may come forward at a later time with evidence that the operative allegations are time-barred. But at this juncture, it has failed to produce any such evidence.

These additional claims advance different legal theories and require proof of different facts involving the circumstances of the purchase of the debt and the asset transfer to the Javlin Parties, with corresponding expense and delay. *See Kaplan v. Rose*, 49 F3d 1363, 1370 (9th Cir

1995) (noting that "[e]xpense, delay, and wear and tear on individuals and companies" counts towards prejudice). The limited discovery so far has revealed a complex corporate structure set up by the Liberty Parties and Javlin Parties. Of even greater concern is the addition of a new party. *See McNally v. Eye Dog Found. for the Blind, Inc.*, No. 1:09-cv-01184-AWI-SKO, 2010 WL 4723073, at *11 (ED Cal Nov. 15, 2010) (holding proposed amendment was "highly prejudicial" because "adding new parties at this date will protract the litigation further"); *Wells Fargo Bank, N.A. v. Renz*, No. C 08-02561-SBA, 2010 WL 2867615, at *3 (ND Cal July 20, 2010) ("The act of simply adding a party is an indicator of prejudice.").

However, Liberty Servicing has indicated its intent to defend the FDCPA claim and class certification on a theory of poverty because it purportedly sold all its assets (docket #69, ¶ 5). The ability to assert these claims against Liberty Holding and obtain the relief it seeks — namely, avoiding the transfer of assets from the Liberty Parties to the Javlin Parties and all distributions made by the Liberty Parties from the proceeds of the asset sale to the extent necessary to satisfy any monetary damage awarded or allowing Jenkin-Brown to levy execution of any judgment against the transferred funds — may be the only chance for the class to obtain a monetary award. Proposed FAC, Prayer for Relief, ¶¶ E-F.

It is unknown why this motion to amend was not filed earlier. However, the delay is likely in large part due to the stays in discovery requested by Liberty Servicing. Each time, Jenkins-Brown opposed the requests for a discovery extension. Whatever the cause of the delay, there is no evidence it was undue or that it has created prejudice to Liberty Servicing. Discovery is ongoing and the class has yet to be certified allowing plenty of time for discovery. *C.f. Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F3d 980, 986 (9th Cir 1999) (finding prejudice where the amendment would require the court to reopen discovery and delay the

proceedings). For these reasons, the amendments to add the Javlin Parties and the new claims for fraudulent transfer (Second Claim) and breach of fiduciary duty (Third Claim) are allowed.

## **ORDER**

Jenkins-Brown's Motions for Leave to File First Amended Class Action Allegation Complaint (dockets #76 & #78) are GRANTED. Villanueva must file a First Amended Complaint on or before March 14, 2016.

DATED February 26, 2016.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge