IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JESUS VILLANUEVA, JR., individually
and on behalf of all others similarly
situated,

     Plaintiff,

  v.

LIBERTY ACQUISITIONS SERVICING,
LLC; LIBERTY HOLDINGS, LLC; JAVLIN
ONE, LLC; and JAVLIN CAPITAL, LLC,

     Defendants.

No. 3:14-cv-01610-HZ (Lead Case)
No. 3:15-cv-02354-HZ

OPINION & ORDER

Joshua L. Ross
Keil M. Mueller
STOLL, STOLL, BERNE LOKTING
& SHLACHTER, P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204

Kelly Donovan Jones
KELLY D. JONES, ATTORNEY AT LAW
819 S.E. Morrison Street, Suite 255
Portland, Oregon 97214

  Attorneys for Plaintiff

1 - OPINION & ORDER

Jonathan M. Radmacher
McKWEN GISVOLD LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204

Brian C. Buescher
KUTAK ROCK LLP
1650 Farnam Street
Omaha, Nebraska 68102

      Attorneys for Defendants Javlin One, LLC and Javlin Capital, LLC

HERNANDEZ, District Judge:

      Plaintiff Jesus Villanueva brings this putative class action alleging a violation of the Fair

Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p (FDCPA), against certain Defendants.

He also brings a fraudulent transfer claim against all Defendants.  Two Defendants, Javlin One,

LLC and Javlin Capital, LLC, move to dismiss the fraudulent transfer claim under Federal Rule

of Civil Procedure 12(b)(6).  For the reasons discussed below, I grant the motion in part and deny

it in part.

BACKGROUND

      Plaintiff alleges that Defendants Liberty Acquisitions Servicing, LLC ("Liberty

Servicing") and Liberty Holdings LLC ("Liberty Holdings") (referred to together as the "Liberty

Parties") violated the FDCPA by collecting a debt they were not entitled to collect.  First Am.

Compl. ¶¶ 50-53.[1]  More specifically, Plaintiff had a Demand Deposit Account (DDA) with U.S.

Bank which allowed overdrafts in certain situations.  Id. ¶ 12.  Although overdraft fees were

charged, U.S. Bank did not charge interest on overdrawn DDA accounts.  Id.  U.S. Bank had no

---

    [1]  I cite to the allegations in the First Amended Complaint of the 14-1610 case because it
is the lead case and its allegations are identical to those in the Complaint in the 15-2354 case.

2 - OPINION & ORDER

contractual right to do so.  Id.  Generally, U.S. Bank would attempt to collect the overdue fees

from DDA account holders but eventually, if unsuccessful, U.S. Bank would "charge off" the

delinquent accounts, declare the debts uncollectable, and claim certain tax advantages as a result.

Id. ¶ 13.

Liberty Servicing is a wholly-owed subsidiary of Liberty Holdings.  Id. ¶ 14.  Liberty

Holdings also owns Liberty Acquisitions II, which is not a named Defendant in this case.  Id.

According to Plaintiff, U.S. Bank sold the "charged off" debts to United Credit Recovery, LLC,

which sold them to Liberty Acquisitions II, which sold them to Liberty Servicing.  Id.

Plaintiff apparently incurred DDA account overdraft charges and did not pay them.  See

id. ¶ 20 (Plaintiff was sued for alleged overdraft charge).  On September 13, 2013, Liberty

Servicing sued Plaintiff for the DDA overdraft debt in Jackson County Circuit Court.  Id.  In that

lawsuit, Liberty Servicing alleged that Plaintiff owed an unpaid balance but also owed interest.

Id. ¶¶ 24, 29.  A default judgment was entered by the Jackson County Circuit Court on December

13, 2013.  Id. ¶ 27.  That judgment included the principal amount owed, as well as pre- and post-

judgment interest.  Id. ¶¶ 27, 28.  Eventually, Liberty Servicing garnished Plaintiff's wages to

satisfy the judgment.  Id. ¶ 30.

Plaintiff alleges that by attempting to collect charged-off DDA account debts with

interest, in lawsuits and demand letters, the Liberty Parties violated various provisions of the

FDCPA.  Id. ¶¶ 29, 32, 33, 50-51.  Plaintiff seeks actual and statutory damages as well as

attorney's fees and costs.  Id.  Plaintiff alleges that Liberty Servicing and Liberty Holdings are

both liable on the FDCPA claim because Liberty Servicing was acting as Liberty Holdings's

agent or alter ego.  Id. ¶ 53.

3 - OPINION & ORDER

Javlin One, LLC and Javlin Capital, LLC (referred to together as the "Javlin Parties") are not named as Defendants in the FDCPA claim.  Id. ¶¶ 50-53.  The allegations against them are limited to a fraudulent transfer claim.  Id. ¶¶ 54-62.[2]  In Count One of that claim, Plaintiff alleges that after the initial Complaint in the 14-1610 case was filed[3], the Liberty Parties transferred, or caused to be transferred, approximately $7.6 million to the Javlin Parties to pay off a preexisting debt allegedly owed to Javlin One by "Liberty Acquisitions I"[4] or Liberty Acquisitions II.  ¶ 55.  In allegations specified in more detail below, Plaintiff alleges that the Javlin Parties are affiliates of the Liberty Parties, that the Javlin Parties knew or had reasonable cause to believe that the $7.6 million transfer would render the Liberty Parties insolvent, and that as a result of the

---

[2]  The Liberty Parties are also named Defendants in both counts of the fraudulent transfer claim.

[3]  The 14-1610 case was filed October 10, 2014 with Andrea Jenkins-Brown as the named Plaintiff.  ECF 1.  Liberty Servicing and an individual later dismissed by Plaintiff, were the named Defendants.  Id.  The case was assigned to Magistrate Judge Stewart.  ECF 2.  After Judge Stewart denied a motion to compel arbitration filed by Defendants, which I adopted in an April 16, 2015 Order, ECF 25, Defendants answered on June 12, 2015.  ECF 43.  Meanwhile, Defendants had filed a summary judgment motion which Judge Stewart recommended denying in a July 29, 2015 Findings & Recommendation.  ECF 55.  I adopted that F&R on September 14, 2015.  ECF 67.  Subsequently, Judge Stewart granted an extension of time to complete class discovery due to the illness of Jenkins-Brown, the putative class representative.  ECF 73.  As a result of Jenkins-Brown's illness, Plaintiff Jenkins-Brown sought leave to amend the Complaint to, inter alia, substitute Villanueva as Plaintiff.  ECF 76, 78.  In a February 26, 2016 Order, Judge Stewart granted that motion.  ECF 87.  As a result, Villanueva was substituted as Plaintiff and the Javlin Parties were added as Defendants.  Id.  The First Amended Complaint was filed on March 9, 2016.  ECF 89, 90.  The case was reassigned to me on July 18, 2016.  ECF 116.

[4]  Paragraph 35 of the First Amended Complaint contains the first reference to "Liberty Acquisitions I."  First Am. Compl. ¶ 35.  Previously, Plaintiff referred to "Liberty Acquisitions II" in Paragraph 14, identifying it as a wholly-owned subsidiary of Liberty Holdings.  Id. ¶ 14. Plaintiff does not identify Liberty Acquisitions I either in the initial reference in Paragraph 35 or in any subsequent reference.  It is unclear if Liberty Acquisitions I is a reference to Liberty Servicing or is a fourth Liberty entity (along with Liberty Servicing, Liberty Holding, and Liberty Acquisitions II).

4 - OPINION & ORDER

transfer, Plaintiff and putative class members are limited in their ability to collect monetary damages from the Liberty Parties that may be awarded to them on the FDCPA claim.  Id. ¶¶ 57-58.  Plaintiff seeks equitable relief, including the avoidance of the transfer necessary to satisfy any such money damages, and an order allowing Plaintiff to levy execution of any judgment obtained in this case against the funds transferred to the Javlin Parties.  Id. ¶ 59.

In Count Two of the fraudulent transfer claim, Plaintiff incorporates all preceding paragraphs of the First Amended Complaint and then alleges that when the Liberty Parties transferred the $7.6 million to the Javlin Parties, the Liberty Parties and the Javlin Parties intended to hinder or delay the ability of Plaintiff and other members of the proposed class to execute any monetary damage award they obtain in the FDCPA claim against the Liberty Parties. Id. ¶¶ 60-61.  They seek the same relief under Count Two as they did under Count One.  Id. ¶ 62.

Finally, Plaintiff brings a breach of fiduciary duty claim against the Liberty Parties.  Id. ¶¶ 63-65.  Neither the FDCPA nor the breach of fiduciary duty claims are at issue in this motion.

STANDARDS

A motion to dismiss for failure to state a claim may be granted when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief.  Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010).  In evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.  Wilson v. Hewlett–Packard Co., 668 F.3d 1136, 1140 (9th Cir. 2012).  However, the court need not accept unsupported conclusory allegations as truthful.  Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

5 - OPINION & ORDER

DISCUSSION

The Javlin Parties argue that the fraudulent transfer claim against them should be dismissed because (1) Count One fails to properly plead that the Javlin Parties are "affiliates" of the Liberty Parties; (2) Count Two is supported by "information and belief" allegations which are not sufficiently particular under Federal Rule of Civil Procedure 9(b); and (3) the claim is barred by the statute of limitations.

I. Applicable Law & Alleged Fraudulent Transfer Violations

The parties agree that Delaware law applies to the fraudulent transfer claim.  Javlin Mot. 3-4, ECF 106; Pl.'s Resp. 3 n.1, ECF 111.  As both parties note, Oregon and Delaware law are substantially similar because both states have adopted the Uniform Fraudulent Transfers Act. Del Code Ann. (D.C.A.) tit. 6, §§ 1301-1311 (Delaware UFTA); Or. Rev. Stat. §§ (O.R.S.) 95.200-95.310.  I agree with the parties and therefore, I do not engage in a choice-of-law analysis.  I apply Delaware law.

The First Amended Complaint does not cite to a particular section of the Delaware UFTA allegedly violated.  In Plaintiff's response to the motion, however, Plaintiff relies on §§ 1305(b) and 1304(a)(1).  A review of those provisions indicates that Count One of Plaintiff's fraudulent transfer claim alleges a violation of § 1305(b) and Count Two alleges a violation of § 1304(a)(1).

Under § 1305(b), a "transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent."  D.C.A. tit. 6, § 1305(b); see also Quadrant Structured Prods. Co. v. Vertin, 102 A.3d 155, 196 (Del. Ch. 2014) (providing elements for cause of action under §

1305(b):  transfer flows from debtor to insider, debtor insolvent at time of transfer, insider had reasonable cause to believe debtor was insolvent, plaintiff was a creditor at time of the transfer). The allegations in support of Count One are that (1) the Liberty Parties (the debtor), (2) made a transfer to the Javlin Parties (alleged "affiliates"), (3) after Plaintiff's claim arose, (4) for an antecedent debt owed to the Javlin Parties, and (5) the Javlin Parties knew or had reasonable cause to believe that the transfer from the Liberty Parties would render the Liberty Parties insolvent.  First Am. Compl. ¶¶ 55-57.

Under § 1304(a)(1), a "transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor[.]" D.C.A. tit. 6, § 1304(a)(1). The allegations in support of Count Two of the fraudulent transfer claim are that (1) the Liberty Parties (the debtor), (2) made a transfer to the Javlin Parties, (3) with the intent to hinder or delay the ability of Plaintiff and putative class members to obtain monetary damages against the Liberty Parties under the FDCPA.  First Am. Compl. ¶ 61.

II.  "Affiliates"

Only the § 1305(b) violation alleged in Count One requires that the transfer be made to an "insider." D.C.A. tit. 6, § 1305(b).  An "insider" includes an "affiliate." D.C.A., tit. 6, § 1301(7)(d).  An "affiliate" means

> [a]  corporation, 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled or held with power to vote by the debtor or a person who directly or indirectly owns, controls or holds with power to vote 20 percent or more of the outstanding voting securities of the debtor[.]"

D.C.A., tit. 6, § 1301(1)(b).

In support of its § 1305(b) claim, Plaintiff alleges:

On information and belief, at least twenty percent of [Liberty] Holding's outstanding voting securities are owned, controlled, or held with power to vote, directly or indirectly, by Triton Pacific Capital Partners, LLC ("Triton").

At all times applicable to this action, [Liberty] Holdings had the ability to, and did in fact, maintain control of [Liberty] Servicing, and [Liberty] Servicing - with [Liberty] Holdings' knowledge and consent - acted on behalf of [Liberty] Holdings in all respects, including in the collection and attempted collection of consumer debts. At all times relevant to this action, any and all of [Liberty] Holding's [sic] employees referenced herein were acting within their scope of employment as agents, principles [sic], officers, managers, and/or employees of [Liberty] Holdings.

On information and belief, Defendant Javlin Capital is a Delaware limited liability company. On information and belief, at least twenty percent of Javlin Capital's outstanding voting securities are owned, controlled or held with power to vote, directly or indirectly, by Triton.

On information and belief, Defendant Javlin One is a Delaware limited liability company. On information and belief, Javlin One is a wholly-owned subsidiary of Javlin Capital.

First Am. Compl. ¶¶ 6-9.

Based on these allegations, Plaintiff's position is that Javlin Capital is an affiliate of Liberty Holdings because Javlin Capital is a corporation which has at least twenty percent of its voting stock owned by Triton which also owns at least twenty percent of the voting securities of Liberty Holdings. [5] The Javlin Parties argue that Plaintiff's "affiliate" allegations are insufficient to state a claim under § 1305(b). They contend that a connection through an affiliated company

_____

[5] In their briefing, the Javlin Parties repeatedly state that Plaintiff's allegations that Triton owns or controls more than twenty percent of Javlin Capital and Liberty Holdings are false. E.g., Javlin Mot 5, 11; Javlin Reply 3, 5, 11, ECF 115. But, as previously noted, in resolving a motion to dismiss under Rule 12(b)(b), the Court accepts allegations of material fact as true.

8 - OPINION & ORDER

alone does not establish that two companies are affiliates under § 1301(1)(b).

In support, the Javlin Parties rely on bankruptcy cases which have construed near identical language governing fraudulent transfers in the bankruptcy context.  See 11 U.S.C. § 101(2)(B) (providing that an "affiliate" is a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor").  I agree with Plaintiff that the cases the Javlin Parties rely on are distinguishable or unpersuasive.

First, the Javlin Parties cite to Eide v. National City Capital Corp. (In re RiversideWorld, Inc.), 366 B.R. 34 (Bankr. N.D. Iowa 2007), suggesting that the court there found no insider status where two companies were sister entities with a common ownership by a third company, but one of those companies held only a seventeen percent limited partnership in another company.  Id. at 43-44.  According to the Javlin Parties, the court determined that common ownership of the two sister companies was insufficient for the sister companies to be insiders or affiliates and that the seventeen percent limited partnership also did not qualify.

As Plaintiff explains, however, the facts were more complex and are distinguishable from the facts here.  In RiversideWorld, the question was whether an entity called National City Capital Corporation was an insider of RiversideWorld, Inc. Id. at 43-44.  There was no question that National City Capital Corporation was a sister entity to National City Equity Partners because both were owned by National City Corporation.  Id. at 44.  One of those sister entities, National City Equity Partners, had a seventeen percent limited partnership interest in Huron Fund, LP.  Id.  There was no question that Huron Fund, LP was a statutory insider of

9 - OPINION & ORDER

RiversideWorld because Huron Fund LP owned eighty-seven percent of the common stock of RiversideWorld's parent company.  Id. at 36-37, 43.  But, the court concluded that National City Equity Partners was NOT a statutory insider of Huron Fund, LP.  Id. at 43.  Given that the interest of National City Equity Partners in Huron Fund, LP was a limited partnership and that its interest was less than twenty percent, National City Equity Partners could not be a statutory insider of Huron Fund, LP.  And, because National City Equity Partners was not a statutory insider of Huron Fund, LP, it was not a statutory insider of RiversideWorld.  Id.

Here, the relationship among the Liberty Parties, the Javlin Parties, and Triton is much more straightforward.  Plaintiff's "affiliate" argument is based on Triton's common ownership of at least twenty percent of common stock of Liberty Holdings and Javlin Capital.  Liberty Holdings and Javlin Capital are sister entities, just like National City Capital Corporation and National City Equity Partners in RiversideWorld.  And, with the statutory minimum of twenty percent common stock ownership by Triton, the statutory definition under Delaware's UFTA for "affiliate" is satisfied.

This is demonstrated by other cases cited by Plaintiff.  In a 2007 case, the court explained the concept of vertical and horizontal affiliate relationships.  In re Reichmann Petroleum Corp., 364 B.R. 916, 920-21 (Bankr. E.D. Texas 2007).  Under § 101(2)(B), which as noted above defines affiliate in near identical terms as the Delaware statute, there are two relationships:  (1) "a vertical relationship between a debtor and a subsidiary (or subsidiary-like) entity"; and (2) a "horizontal relationship between a debtor and another entity which share a common parent (or parent-like) entity, which accordingly justifies treating the debtor and its 'sibling' entity as affiliates."  Id. at 920.  The court concluded that the statutory definition was satisfied when the

record showed that a company called Striker owned at least twenty percent of the shares of the

debtor Reichmann and also owned seventy percent of a company called Emergent which in turn

owned one hundred percent of a company called Freedom. Id. at 921.  "Because Striker directly

or indirectly owns or controls at least 20 percent of the outstanding voting shares of both

Reichmann and Freedom, Freedom and Reichmann are, in fact, affiliates based upon the

existence of the requisite horizontal relationship upon which affiliate status is conferred by the

second prong of § 102(B) of the Bankruptcy Code."  Id. at 921.

     In an earlier case, the court similarly found that companies named "FIL" and "Emerson"

were affiliates under § 101(2)(B) when a company called Centralinvest, S.A. directly owned

twenty percent of FIL and one hundred percent of "FIN" and FIN owned fifty percent of

Emerson.  In re Emerson Radio Corp., 173 B.R. 490, 493 (Bankr. D.N.J. 1994) (citing In re

PortJeff Dev. Corp., 118 B.R. 184, 186 (Bankr. E.D.N.Y. 1990) (two companies sharing

common party are affiliates even though neither company had an ownership interest in the

other)), aff'd, 52 F.3d 50 (3d Cir. 1995).  The Emerson Radio court also rejected an argument that

the relationship among the entities was too indirect to indicate the opportunity for one to control

the other, even indirectly.  Id.  The court explained that the "literal language of 101(2)(B)"

established the requisite control "by virtue" of the twenty percent threshold.  Id.

     Finally, in a 2015 case, the bankruptcy court rejected an argument by the defendants that

common ownership is not sufficient to make one an affiliate.  Burtch v. Opus, LLC (In re Opus

East, LLC), 528 B.R. 30, 91 (Bankr. D. Del 2015), aff'd, No. 15-346-RGA, 2016 WL 1298965

(D. Del. Mar. 31, 2016), appeal filed, No. 16-2202 (3d Cir. May 10, 2016).  In support of their

argument, the Opus East defendants relied on the same case the Javlin Parties rely on here for the

same proposition.  <u>Opus East</u>, 528 B.R. at 91 (citing <u>Serrano v. Gulf Chem. Corp., Ltd. (In re</u>

<u>Caribbean Petroleum LP</u>, 322 B.R. 726, 728 (D. Del. 2005); Javlin Mot. 5 (citing the same case).

I agree with Plaintiff that <u>Caribbean Petroleum</u> is an outlier and is not consistent with the

majority of the relevant cases.  The <u>only</u> case to have cited <u>Caribbean Petroleum</u> is <u>Opus East</u>,

which refused to rely on it.  The <u>Opus East</u> court explained that "the ruling [in <u>Caribbean</u>

<u>Petroleum</u>] flies in the face of the express language of section 101(2)(B) of the Code and

provides no reasoning for its conclusion." <u>Opus East</u>, 528 B.R. at 91 (further noting that "[c]ases

to the contrary rely on the express language of the Code").  For the reasons expressed by <u>Opus</u>

<u>East</u>, <u>Caribbean Petroleum</u> is unpersuasive.

Plaintiff's First Amended Complaint sufficiently alleges that the Liberty Parties and the

Javlin Parties are affiliates as defined under § 1301(1)(b) of the Delaware UFTA, and thus, for

the purposes of Plaintiff's claim under § 1305(b) (Count One of the fraudulent transfer claim),

Plaintiff's allegations state a claim as to the "insider" element.[6]

III.  Rule 9(b)

A.  Applicability of Rule 9 to Fraudulent Transfer Claims

The Javlin Parties move against Count Two of the fraudulent transfer claim on the basis

that the "information and belief" allegations in support of that claim fail to comply with the

particularity requirements of Rule 9(b).  Fed. R. Civ. P. 9(b) (requiring, in allegations of fraud,

that "a party must state with particularity the circumstances constituting fraud or mistake").  In

their motion, the Javlin Parties clearly limit their "affiliate" argument to Count One and clearly

---

[6]  Given my conclusion regarding the sufficiency of the statutory insider allegations, I do
not consider the non-statutory insider argument.

limit their Rule 9(b) argument to Count Two.  Javlin Mot. 3, 6.  In responding to the motion, Plaintiff notes, appropriately, that the Javlin Parties did not argue that Rule 9 applies to Count One.  Pl.'s Resp. 8 n.3.  In reply, the Javlin Parties contend they did assert a Rule 9 argument as to Count One.  Javlin Reply 2 n.1.  They point to the opening sentence of their "affiliate" argument directed to Count One which quotes paragraph 56 of the First Amended Complaint alleging that "on information and belief," Triton owns twenty percent or more of Javlin Capital's outstanding voting securities.  Id. (citing Javlin Mot. 3 (quoting First Am. Compl. ¶ 56)).  While the Javlin Parties did quote the "information and belief" language, nowhere in the relevant section of their Memorandum do they make a Rule 9 argument as to Count One.

Even if they had made the argument, I reject it.   Under Delaware law, pleading requirements for fraud are not applicable to all fraudulent transfer claims.  In a 1992 case, the District Court for the District of Delaware, applying Delaware law, stated that "[d]espite the similarity in the terms 'fraud' and 'fraudulent conveyance,' the pleading requirements for fraud [in Rule 9] are not necessarily applicable to pleadings alleging a fraudulent conveyance."  China Resource Prods. (U.S.A.), Ltd. v. Fayda Int'l, Inc., 788 F. Supp. 815, 818 (D. Del. 1992).  The court explained that a finding of fraudulent intent "was once a necessary part of fraudulent conveyance law."  Id.  Consistent with that principle, the court noted that under a certain section of the Delaware UFTA, a plaintiff could establish a fraudulent conveyance by proving an actual intent to defraud.  Id. (citing D.C.A. tit. 6, § 1307).[7]

---

[7]  At the time China Resource was decided, § 1307 provided that a conveyance made with actual intent to hinder, delay, or defraud present or future creditors is fraudulent as to both present and future creditors.  China Resource, 788 F. Supp. at 818 n.1.  The Delaware UFTA was amended in 1994 and this section was amended and reenacted as § 1304.  70 Del. Laws 1996, ch. 434, § 1, eff. July 3, 1996.

The court continued, however, and explained that the Delaware UFTA now "moves beyond the question of fraudulent intent" by providing for fraudulent transfers in which the "actual intent of the parties to the conveyance is of no consequence[.]"  Id. (internal quotation marks omitted).  Thus, other statutory sections allow a plaintiff to establish a fraudulent conveyance by demonstrating, for example, that a conveyance (1) was made without fair consideration by a person or entity who is or will be rendered insolvent thereby, or (2) was made by a person who is engaged or about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, or (3) was made by a person who intends or believes he will incur debts beyond his ability to pay as they mature.  Id. at 818-19 (citing various Delaware UFTA provisions).  These statutory provisions require no proof of fraud and thus, Rule 9(b) does not apply to pleadings asserting such claims.  Id. at 819.

China Resources remains good law.  In a 2015 case, Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus., Inc.), No. AP 14-50377 (MFW), 2015 WL 3827003 (Bankr. D. Del. June 19, 2015), the court quoted  Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.), 327 B.R. 711, 717 (Bankr. D. Del. 2005), which in turn quoted China Resources, for the proposition that "the pleading requirements for fraud are not necessarily applicable to pleadings alleging a fraudulent conveyance."  Forman, 2015 WL 3827003, at *5 (applying lower pleading standards of Rule 8(a)(2) to claims for "constructive fraud" under Delaware's UFTA).

Here, following China Resources, Rule 9(b)'s particularly requirements do not apply to Count One of the fraudulent transfer claim because that Count, brought under § 1305(b), does not require fraudulent intent.  Instead, Plaintiff can establish a fraudulent conveyance under that

section by proving that after Plaintiff's claim arose, the Liberty Parties made a transfer to an affiliate/insider for an antecedent debt, that the Liberty Parties were insolvent at the time, and that the affiliate/insider had reasonable cause to believe that the Liberty Parties were insolvent. D.C.A. tit. 6, § 1305(b).  No intentional fraud is required.  Thus, Rule 9(b) does not apply to Count One.[8]

As to Count Two, the Javlin Parties are correct that Rule 9(b)'s particularity requirements apply.  That count alleges a violation of § 1304(a)(1) which expressly requires an intent to hinder, delay, or defraud the creditor.  D.C.A. tit. 6, § 1304(a)(1); see also Geyer v. Ingersoll Pubs. Co., 621 A.2d 784, 792 n.5 (Del. Ch. 1992) (concluding that Delaware Rule 9(b), identical to Federal Rule of Procedure 9(b), applied to a Delaware UFTA claim based on an intent to hinder, delay, or defraud under then § 1307).

B.  Analysis of Count Two Allegations Under Rule 9

To establish a claim under § 1304(a)(1), Plaintiff must prove two things:  (1) that the Liberty Parties made a transfer, and (2) they did so with the actual intent to hinder, delay, or defraud any creditor.  D.C.A. tit. 6, § 1304(a)(1).  It does not matter whether the transfer was made before or after the creditor's claim arose.  Id.  The intent of the Javlin Parties is irrelevant. Michaelson v. Farmer (In re Appleseed's Intermediate Holdings, LLC), 470 B.R. 289, 300 (D. Del. 2012) (in claim under § 1304(a)(1), "[t]he only relevant intent is that of the debtor").

In support of Count Two, Plaintiff alleges:

> On information and belief, when the Liberty Parties transferred, or caused

---

[8]  Additionally, Defendants make no argument that "information and belief" allegations are insufficient under Rule 8(a)(2) to support the Count One claim.

> to be transferred, approximately $7.6 million to the Javlin Parties, the Liberty
> Parties and the Javlin Parties intended to hinder or delay the ability of Plaintiff
> and other members of the proposed class [to collect monetary damages they may
> be awarded in connection with the FDCPA claim.]

First Am. Compl. ¶ 61.

Incorporating previous allegations, Plaintiff also alleges that "[o]n information and belief, on or about December 19, 2014," the Liberty Parties sold their assets to Jefferson Capital Systems for cash and equity in Jefferson. Id. ¶ 34. They further contend that "[o]n information and belief," and "in connection with the sale of their assets, the Liberty Parties directed Jefferson to transfer approximately $7.6 million of the proceeds of the sale to the Javlin Parties, purportedly in repayment of a loan made by Javlin One to Liberty Acquisitions I, LLC and Liberty Acquisitions II, LLC." Id. ¶ 35.

These are the relevant allegations regarding the $7.6 million transfer. Generally, "information and belief" allegations do "not satisfy the degree of particularity required under Rule 9(b)[.]" Skinner Bonding of Or. v. CSSG, Inc., No. CIV.05-118-HA, 2005 WL 1745562, at *4 (D. Or. July 22, 2005) (citing Wool v. Tandem Computs, Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), overruled on other grounds Hillinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990) (en banc)). However, the rule is "relaxed as to matters peculiarly within the opposing party's knowledge." Wool, 818 F.2d at 1439 (internal quotation marks omitted). This exception applies in situations where the plaintiff could not be expected to have personal knowledge of the facts constituting the wrongdoing. Id. (citation omitted). In such cases, Rule 9(b) is satisfied by a statement of the facts upon which the belief is grounded. Id..

Here, Plaintiff's allegations regarding the $7.6 million transfer that the Liberty Parties

allegedly directed Jefferson Capital to make to the Javlin Parties do not comply with Rule 9(b) because they are asserted "on information and belief" and without also alleging facts upon which the belief is grounded.  Neubronner v. Millken, 6 F.3d 666, 672 (9th Cir. 1993) ("a plaintiff who makes allegations on information and belief must state the factual basis for the belief").

As to the intent element, section 1304(b) of the Delaware UFTA lists eleven non-exclusive factors to consider in determining actual intent under § 1304(a)(1).  These include that the transfer or obligation was made to an insider, the debtor had been sued or was threatened with suit before the transfer occurred, the transfer was of substantially all the debtor's assets, and the debtor was insolvent or became insolvent shortly after the transfer was made.  D.C.A. tit. 6, § 1304(b).  Plaintiff argues that these are sufficient facts to support the intent element because they show that the Javlin Parties were affiliates and thus, statutory insiders, of the Liberty Parties, that the transfer occurred after the 14-1610 lawsuit was filed, and that the Javlin Parties knew or had reason to know that the transfer would render the Liberty Parties insolvent and unable to pay any of the Liberty Parties' outstanding obligations, including damages that might be awarded in this action.  First Am. Compl. ¶¶ 6, 7, 8, 9, 56 (affiliate); ¶¶ 34, 35, 36 (timing, knowledge of legal claims); ¶¶ 37, 57 (insolvency).

While Plaintiff alleges several "badges of fraud" which could permit an inference of fraudulent intent, most of the allegations are made "on information and belief."  Although Rule 9(b) provides that "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally[,]" Fed. R. Civ. P. 9(b), Plaintiff's factual "badges of fraud" allegations do not comport with Rule 9(b).  At a minimum, Plaintiff must support its "information and belief" assertions with allegations showing the factual basis for the belief.

17 - OPINION & ORDER

Plaintiff requests leave to amend in the event the Court determines that Rule 9(b) applies to Count Two and that the allegations in the First Amended Complaint are not specific enough. The Javlin Parties oppose that request.  They argue that Plaintiff has already amended once and that any amendment cannot cure "the fact that the claims against Javlin are premised on the patently false allegation that Triton owns more than 20% of Javlin."  Javlin Reply 11.

I grant Plaintiff's request for leave to amend the allegations in support of Count Two.  In the original Complaint, the only claim was the FDCPA claim and the Javlin Parties were not named as defendants.  Therefore, there has been no previous opportunity to clarify the fraudulent transfer claim allegations or any allegations as to the Javlin Parties.  The Javlin Parties' belief that the twenty percent allegations are false is not relevant at this stage.

IV.  Reasonably Equivalent Value

The Javlin Parties spend a fair amount of time in their Reply Memorandum arguing that both counts of the fraudulent transfer claim fail to state a claim because there are no allegations that the Liberty Parties made or directed the $7.6 million transfer without receiving a reasonably equivalent value in exchange.  Javlin Reply 5-8, 10.  The problem with this argument is that neither of Plaintiff's Delaware UFTA claims require proof of this "reasonably equivalent value" fact.  Under § 1304(a), a transfer by a debtor will be fraudulent if the debtor made the transfer "(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor . . . ."  D.C.A. tit. 6, § 1304(1) (emphasis added).  The statutory language is clear:  the transfer is fraudulent if either it was made with fraudulent intent or the debtor did not receive a reasonably equivalent value along with other factors.  Here, I have construed Count Two of the fraudulent

18 - OPINION & ORDER

transfer claim as having been brought under § 1304(1)(a).  No "reasonably equivalent value" allegations are required.  Similarly, the plain language of § 1305(b) shows that no such allegations are required to support Count One of the claim.

V.  Statute of Limitations

Under Delaware law, a claim under § 1305(b) (Count One), must be brought within one year after the transfer was made.  D.C.A. tit. 6, § 1309(3).  However, for claims under § 1304(a)(1) (Count Two), the claim must be brought within four years after the transfer was made. D.C.A. tit. 6, § 1309(1).  Oregon law is the same.  O.R.S. 95.280.

The Javlin Parties argue that the fraudulent transfer claim is barred by the statute of limitations because the transfer at issue occurred on December 19, 2014, and the First Amended Complaint asserting the fraudulent transfer claim and naming the Javlin Parties as Defendants, was not filed until March 9, 2016.  ECF 89, 90.  The argument ignores that as to Count Two, a four-year statute of limitations applies and thus, Plaintiff's claim under § 1304(a)(1) is timely.  As to Count One, the issue is whether the claim was "filed" for statute of limitations purposes when the motion for leave to amend was filed on December 17, 2015 (making it timely), or was "filed" for such purposes only after leave to amend was granted and the pleading was formally filed in the case, a date clearly after the expiration of the limitations period.[9]

There is no controlling Ninth Circuit precedent.  The parties have cited no persuasive cases from this District and I have found none.  There are, however, many cases from around the

---

[9]  Although the motion to dismiss is considered to have been brought in both the 14-1610 case and the 15-2354 case because the cases have been consolidated, the statute of limitations argument can be made only in the 14-1610 case because the Complaint in the 15-2354 case was filed on December 17, 2015, making both Count One and Count Two timely based on an alleged December 19, 2014 transfer.

country holding that "[w]hen a plaintiff seeks to add a new defendant in an existing action, the

date of the filing of the motion to amend constitutes the date the action was commenced for

statute of limitations purposes." Rothman v. Gregor, 220 F.3d 81, 96 (2d Cir. 2000) (internal

quotation marks omitted); see also Moore v. Indiana, 999 F.2d 1125, 1131 (7th Cir. 1993) ("the

submission of a motion for leave to amend, properly accompanied by the proposed amended

complaint that provides notice of the substance of those amendments, tolls the statute of

limitations, even though technically the amended complaint will not be filed until the court rules

on the motion"); Mayes v. AT&T Info. Sys., Inc., 867 F.2d 1172, 1173 (8th Cir. 1989)

(concluding that an "amended complaint is deemed filed within the limitations period" when a

motion for leave to amend is filed before the expiration of the statute of limitations but the entry

of the court order and the filing of the amended complaint occur after the limitations period has

expired) (citing cases from the Fifth Circuit and several district courts); Hardesty v. Sacramento

Metro. Air Quality Mgmt. Dist., 935 F. Supp. 2d 968, 980-81 (E.D. Cal. 2013) (in the absence of

Ninth Circuit guidance, court followed Mayes and concluded that a claim is timely if it is

included in a motion to amend which is filed before the expiration of the statute of limitations).

The reasons given for deeming the amended complaint to have been filed on the date the

motion for leave to amend was filed include the lack of control the party has over the court's

acting on the motion for leave and the fact that when the proposed amended complaint is

attached to the motion, notice of the substance of the amendments is provided. Moore, 999 F.2d

at 1131; In re Wash. Mut., Inc. Sec. Derivative & ERISA Litig., Nos. 2:08-md-1919 MJP, C08-

387 MJP, 2011 WL 321736, at *2 (W.D. Wash. Jan. 28, 2011) (two reasons support the

conclusion that in regard to "the statute of limitations, an amended pleading is effectively filed

when a motion to amend is filed"; noting (1) "the parties have no power to control when the court renders its decision on a motion to amend"; and (2) "if the motion to amend is accompanied by a proposed amended pleading, the motion puts the defendant on notice of the impending claim").

Even some of the cases the Javlin Parties cite for a contrary position are supportive of the conclusion that the filing of the motion to amend is the operative date when considering a statute of limitations argument. The Javlin Parties write that the Fourth Circuit has criticized Mayes for failing to analyze the issue under the applicable Federal Rules of Civil Procedure. Javlin Reply 13 (citing Angles v. Dollar Tree Stores, Inc., 494 F. App'x 326, 330 n.7 (4th Cir. 2012)). The Fourth Circuit, in discussing the plaintiffs' argument, noted that some cases referred to "tolling" but that earlier cases had employed the "deeming" concept. Angles, 494 F. App'x at 330. As an example of the "tolling" cases, the Angles court cited to Moore. Id. It cited to Mayes as an example of the "deeming" cases. Id. In a footnote, the Angles court explained that the approach of the "deeming" cases stemmed from a Fifth Circuit case predating the Federal Rules of Civil Procedure. Id. at 330 n.7.

The Javlin Parties mistakenly assert that the Angles court rejected the reasoning of Mayes. At the beginning of its discussion, the court wrote: "the Plaintiffs correctly note that courts have generally concluded that when a motion for leave to amend is later granted, the amended complaint is deemed timely even if the court's permission is granted after the limitations period ends." 494 F. App'x at 330. The court then explained why the rule did not apply in the case before it. Id. The court noted that in contrast to the cases the plaintiffs relied on, the motion for leave to amend in Angles was never granted. Then, afer noting the "tolling" and "deeming" approaches of Moore and Mayes, the court held that "[t]he Plaintiffs' amended

21 - OPINION & ORDER

complaint cannot be 'deemed filed' in a timely fashion because it was never accepted by the district court." Id. The Angles court did not reject the "deeming" approach used in Mayes. In fact, it relied on that approach but concluded that absent the court's later granting of the motion to amend, the "deeming" concept simply did not apply.

The Javlin Parties also suggest that Angles required a nunc pro tunc order to be issued by the court before an amended complaint could be deemed filed as of the date of the motion to amend. Javlin Reply 13-14. This stems from a careless reading of Angles. It is clear from the decision that the "nunc pro tunc" language was a quote from the district court decision. 494 F. App'x at 330. The Fourth Circuit quoted language from the district court decision below in which the district court explained the basis for the general rule that the motion to amend makes a later-filed amended complaint timely. Id. The Fourth Circuit did not state that a nunc pro tunc order is required. There is no authority for the position taken by the Javlin Parties that the First Amended Complaint in this case cannot be considered to have been filed within the statute of limitations because of the absence of a nunc pro tunc order. And, it is clear that the Fourth Circuit in Angles neither expressly followed nor rejected the cases allowing the date of a motion to amend to control for purposes of the statute of limitations when the motion to amend is later granted outside the limitations period. The key fact in Angles was that the motion for leave had never been granted. Angles is distinguishable.

The Javlin Parties also cite to a Massachusetts case to support their contention that other cases have criticized the reasoning of Moore. Javlin Reply 14 (citing Nett v. Bellucci, 437 Mass. 630, 643 & n.12, 774 N.E. 2d 130, 140 & n.12 (Mass 2002)). But, Nett's criticism of Moore was limited to Moore's reliance on the "tolling" concept. Nett, 437 Mass. at 643 & n.12, 774 N.E. 2d

22 - OPINION & ORDER

at 140 & n.12 (noting that "[b]etter reasoned decisions recognize that it is incorrect to characterize a motion to amend as an event that 'tolls' a statute").  While Nett rejected "tolling" as the basis for finding the date of motion to amend to be the operative filing date of the amended complaint, it expressly adopted the rule:  "We adopt the more accurate formulation that the filing of the motion to amend actually commences the new action for these purposes, with the motion to amend 'standing in the place of' the amended complaint."  Id. at 643-44, 774 N.E. 2d at 140 (quoting Mayes, 867 F.2d at 1173) (brackets omitted).  The Javlin Parties' reliance on Nett is misplaced.

Plaintiff here filed the proposed amended complaint with the motion to amend on December 17, 2015.  The motion to amend was granted.  With these facts, I find no reason not to apply the prevailing rule as articulated by circuit and district courts around the country.  The effective date for the assertion of the fraudulent conveyance claim was December 17, 2015, the date the motion for leave to amend was filed.  Accordingly, Count One of the fraudulent transfer claim, just like Count Two, is timely.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

23 - OPINION & ORDER

CONCLUSION

The Javlin Parties' motion to dismiss [106] is granted in part and denied in part as follows:  the motion is denied as to Count One of the fraudulent transfer claim and is granted as to Count Two of the fraudulent transfer claim.  Plaintiff is granted leave to file a second amended complaint.

IT IS SO ORDERED.

Dated this _____ day of _____, 2016

Marco A. Hernandez
United States District Judge

24 - OPINION & ORDER